OLYMPIC FEDERAL, Plaintiff-Appellant, v. AMERICAN INTERINSURANCE EXCHANGE, Defendant-Appellee.

Fifth District   No. 5—87—0862

Opinion filed September 17, 1990.

John R. Leitz, Jr., of Berwyn, and Stanton D. Ernest, of Fowler, Rhine, Cawley & Ernest, of Mt. Carmel, for appellant.

No brief filed for appellee.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiff Olympic Federal, a financial institution, brought an action for declaratory relief against American Interinsurance Exchange, defendant, asking the circuit court to construe a policy of insurance issued by the defendant, insuring a 1984 Thunderbird owned by Howard Hodgson and upon which plaintiff had a lien.

Plaintiff alleged: it had made a purchase money loan for the automobile to Hodgson; a condition of the loan required Hodgson to insure the automobile; Hodgson had obtained insurance from the defendant;

a renewal premium was due on July 25, 1985; defendant sent a renewal premium notice to Hodgson, but not to the plaintiff-lienholder; Hodgson did not pay the renewal premium; the automobile was totally destroyed in a traffic accident on August 4, 1985; and two days after the wreck, defendant sent to Hodgson and to plaintiff a notice that the insurance policy had expired on July 25, 1985.

Plaintiff alleged that if it had received notice that the premium had not been paid, it would have obtained substitute insurance before the car was totally destroyed.

The circuit court dismissed plaintiff's complaint, reasoning that section 143.17 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.17) is written in two sections. Section (a) forbids nonrenewal unless the lienholder is given notice of intention not to renew; section (b) provides that section (a) does not apply when the insurance company has manifested its willingness to renew directly to the insured. Since Hodgson was the named insured, and since defendant, before the expiration date, had sent to him a notice of the renewal premium (which is a manifestation of a willingness to renew according to the *Shiaras v. Chupp* (1975), 61 Ill. 2d 164, 334 N.E.2d 129, case), section (b) provided that section (a) did not apply to the facts of the case. Therefore, the circuit court found there was no requirement that the insurance company send to the plaintiff-lienholder a notice of intention not to renew under the Insurance Code. The circuit court ruled that the policy had expired and that there was no coverage that could be extended to plaintiff.

We affirm and note that plaintiff brought its case solely under the Insurance Code. Had plaintiff presented a case brought under common law, perhaps there might have been a remedy. But, the case was not presented on any common law theory. It was brought under a statute. That builds a small room around us.

■ The Illinois Insurance Code commands an insurance company to renew an automobile insurance policy, unless it first sends to the insured 30 days' notice of its intention not to renew. Ill. Rev. Stat. 1985, ch. 73, par. 755.17(a).

However, if the insurance company has manifested its willingness to renew directly to the insured, then this command does not apply. Ill. Rev. Stat. 1985, ch. 73, par. 755.17(b).

■ Notice of renewal and premium due sent to the insured by the insurance company is deemed a manifestation of willingness to renew; and where such notice has been sent to the insured, failure to pay the premium before the renewal date will result in the expiration of the policy. *Shiaras v. Chupp* (1975), 61 Ill. 2d 164, 334 N.E.2d 129.

The relevant provisions of the Insurance Code say:

"(a) No company shall fail to renew any policy of insurance *** unless it shall send by mail to the named insured and the mortgagee or lien holder *** at least 30 days advanced notice of its intention not to renew. An exact and unaltered copy of such notice shall also be sent to *** the lien holder ***. However, where cancellation is for nonpayment of premium, at least 10 days notice of cancellation shall be given.

(b) This Section does not apply if the company has manifested its willingness to renew directly to the named insured." Ill. Rev. Stat. 1985, ch. 73, pars. 755.17 (a), (b).

Plaintiff argues on appeal: (1) that the language of the section relied upon shows that the legislature's intent is to protect lienholders; and (2) that the use of the word "cancellation" in the last sentence of the statute (which deals with "nonrenewals" rather than "cancellations") implies that the legislature intended this section to apply to cases such as this, so that if the insured did not pay premiums, the insurance company would have to give 10 days' notice to a lienholder before the insurance coverage would terminate.

■ Inclusion of the word "cancellation" in a provision that deals with "nonrenewals" is enigmatic, to say the least.

The Insurance Code defines "cancellation" as follows:

" 'Cancellation' or 'cancelled' means the termination of a policy by an insurer prior to the expiration date of the policy. A policy of automobile or fire and extended coverage insurance which expires by its own terms on the policy expiration date unless advanced premiums are received by the insurer for succeeding policy period shall not be considered 'cancelled' or a 'cancellation' effected by the insurer in the event such premiums are not paid on or before the policy expiration date." Ill. Rev. Stat. 1985, ch. 73, par. 755.13(f).

This definition makes clear that "cancellation" and "nonrenewal" are separate terms. Furthermore, courts consistently have interpreted the provisions of the Insurance Code so as to maintain the distinction between these two terms, holding that they are not interchangeable. *Steward v. Allstate Insurance Co.* (1980), 92 Ill. App. 3d 637, 415 N.E.2d 1206; *Shiaras v. Chupp* (1975), 61 Ill. 2d 164, 334 N.E.2d 129.

"Cancellation" refers to a unilateral termination by an insurer before the end of the policy period, while "nonrenewal" refers to the automatic expiration of a policy at the end of the policy period. *Shiaras v. Chupp* (1975), 61 Ill. 2d 164, 334 N.E.2d 129.

In the *Shiaras* case, a notice of premium was sent. The policy ex-

piration date came. The insured did not pay. The court ruled that the policy had not been "cancelled." Rather, the court held that the policy had not been "renewed," and therefore, there was no coverage for a wreck that happened 19 hours and 47 minutes after the policy had expired.

The difficulty is seen. If "cancellation" means what the cases interpreting the Code say it means, then its inclusion in the nonrenewal provision is enigmatic indeed. And, perhaps this enigma forms the basis of plaintiff's appeal.

■ However, we do not have to deal with this enigma. We do not have to interpret the statute. The plain, clear, express language of part (b) of the provision says, "This section does not apply if the company has manifested a willingness to renew directly to the named insured." (Ill. Rev. Stat. 1985, ch. 73, par. 755.17(b).) Courts are to construe a statute by first looking to the words employed by the legislature. We may not alter the plain meaning of those words. *People v. Cochran* (1988), 167 Ill. App. 3d 830, 522 N.E.2d 261.

■ By the plain, express language of the statute, section 143.17(a) does not apply, if the insurance company sends out the premium notice to the insured in a timely manner. Since that was done in this case, section 143.17(a) has no application by operation of part (b) thereof.

Before we could rule for plaintiff and extend coverage, we would have to rewrite the statute by excising paragraph (b). We cannot rewrite the statute, however.

Cardozo put it this way: "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take this statute as we find it." (Frankfurter, *Some Reflections on the Readings of Statutes*, 47 Colum. L. Rev. 527, 534 (1947).) Taking it as we find it, the clear, express language of the statute compels us to affirm.

Here, the language of the statute is plain and admits of no more than one meaning. The duty of interpretation, therefore, does not arise.

If the legislature wants a case brought under its statutes to turn out the way plaintiff does, they, not the courts, should make the necessary statutory provisions.

We, therefore, affirm the circuit court.

Affirmed.

HARRISON and RARICK, JJ., concur.