108 Ill. App.3d 161 (1982)
438 N.E.2d 1267
In re COMMITMENT OF RONALD COPPERSMITH.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
RONALD COPPERSMITH, Respondent-Appellant.)
No. 81-3116.
Illinois Appellate Court  First District (3rd Division).
Opinion filed July 21, 1982.
*162 Mark J. Heyrman and Jeffrey Peck, both of Chicago, for appellant.
Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David L. King, and Leslie E. South, Assistant State's Attorneys, of counsel), for the People.
Judgment reversed.
JUSTICE RIZZI delivered the opinion of the court:
Respondent appeals from an order of the circuit court which refused to grant him compensatory good time credit in setting his release date from the Department of Mental Health and Developmental Disabilities (DMHDD). Respondent argues that the trial court erred in calculating his sentence credit for good behavior. We reverse.
On June 12, 1971, respondent was arrested for murder and incarcerated until September 14, 1971. The following day he was found unfit to stand trial, and he was committed to DMHDD until July 14, 1977, when he was found fit to stand trial. From the latter date until his trial on November 2, 1977, he was confined in the county jail. He was then found not guilty by reason of insanity and committed to DMHDD. Ill. Rev. Stat. 1977, ch. 38, par. 1005-2-4.
In accord with People v. Thiem (1980), 82 Ill. App.3d 956, 962, 403 N.E.2d 647, 652, the trial court conducted a hearing to set a maximum period of commitment for respondent. The court indicated that had respondent been convicted, it would have assessed a sentence of 200 to 600 years as an indeterminate term since respondent elected to be sentenced in accord with the law in effect prior to February 1, 1978. The court also found that respondent would have then been eligible for parole in 20 years less credit for good behavior; that application of statutory good time credit reduced the time of respondent's parole eligibility to 11 years and 3 months; that respondent was entitled to credit for the time he was in custody of DMHDD and the sheriff; but that respondent was not entitled to compensatory good time credit. The court then set respondent's release date at no later than September 12, 1982.
Respondent now argues that he was improperly denied compensatory *163 good time credit in violation of section 5-2-4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005-2-4(b)). Respondent's position is based on his argument that no logical distinction exists to differentiate between statutory and compensatory credits. Nor, respondent says, does section 5-2-4(b) distinguish between these credits when it requires that a person found not guilty by reason of insanity, yet in need of mental treatment, shall be committed to DMHDD for an indefinite period of time:
"provided, however, that such period of commitment shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, before becoming eligible for parole had he been convicted of and received the maximum sentence for the most serious crime for which he has been acquitted by reason of insanity."
Respondent concludes that had he been in the custody of the Department of Corrections (DOC), its regulations would have allowed him to receive not only statutory good time credit but also compensatory good time credit. He calculates that the latter credit would have reduced his release date by about 2 years and entitled him to have been released in October 1980.
The State argues that compensatory good time is available only to those who are in the custody of DOC as set forth in its regulation A.R. 866 and not to someone in the custody of DMHDD.
We believe that the case of Hampton v. Rowe (1980), 88 Ill. App.3d 352, 410 N.E.2d 511, is instructive in resolving this issue. There, a DOC inmate sought a writ of mandamus against DOC to credit his penitentiary sentence with compensatory good time credits for the period of time he was incarcerated in the county jail pending trial because he could not make bond. The inmate contended that he was denied equal protection under A.R. 866 because a person who was not incarcerated prior to being convicted because he was able to make bail or was released on his own recognizance would receive compensatory good time credits from the first day of his confinement in a DOC facility. The trial court agreed, and it remanded the case with directions that the writ of mandamus be issued. In reaching its decision, the court noted that the history of A.R. 866 showed that compensatory good time credits were no longer based only on participation in rehabilitation programs or satisfactory performance of work assignments, and that the only difference between statutory good time and compensatory good time was the amount and method of computation. 88 Ill. App.3d 352, 354-55, 410 N.E.2d 511, 512-13.
We perceive no logical distinction why respondent, who was in *164 custody of DMHDD, should be treated differently than the plaintiff in Hampton. Respondent should have received compensatory good time credit.
Our determination is buttressed by the timing of the enactment of the current section 5-2-4(b) of the Unified Code of Corrections now at issue. That statute was enacted in 1977 (Pub. Act 80-164), when both statutory and compensatory good time credits were still authorized. Yet, the legislature made no distinction between them in section 5-2-4(b). We believe that this is indicative of the legislature's intent that the credits were not to be treated differently in section 5-2-4(b).
In its brief, the State concedes that if respondent's position is accepted, his calculations are correct concerning his release date and remand is unnecessary since this court has the authority to reverse the trial court's order (73 Ill.2d R. 615(b)(1)). We therefore conclude that respondent is entitled to his immediate release unless his civil commitment is sought.
Accordingly, the judgment of the circuit court is reversed.
Reversed.
McNAMARA and McGILLICUDDY, JJ., concur.