THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE KOKKENEIS, Defendant-Appellant.

First District (6th Division) No. 1—91—0474

Opinion filed March 25, 1994.

Rita A. Fry, Public Defender, of Chicago (Kim L. Sorrells, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, and Ann Kidd, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GIANNIS delivered the opinion of the court:

Following a bench trial, defendant, George Kokkeneis, was found not guilty by reason of insanity on a charge of aggravated arson. Based upon the determination that defendant was in need of inpatient mental health services and subject to involuntary admission, the trial court ordered that defendant be committed to the Illinois Department of Mental Health and Developmental Disabilities for a maximum term not to exceed 15 years. The trial court's final computation of defendant's maximum term of commitment excluded an additional 180-day period of good-time credit. Defendant appeals, contending that he was entitled to receive credit for the additional 180-day period provided for in the statute.

The record reveals that defendant was charged by indictment with aggravated arson. (Ill. Rev. Stat. 1989, ch. 38, par. 20—1.1(a)(1) (now 720 ILCS 5/20—1.1(a)(1) (West 1992)).) The evidence adduced at trial established that on April 25, 1989, defendant intentionally started a fire in a dumpster located behind the Hellenic Enterprises grocery store, located at 6058 West Diversey, and the fire spread to the building which housed the grocery store and a second-floor apartment. The evidence further established that when defendant started the fire, the grocery store was open for business, and there were people in the store as well as in the upstairs apartment. Defendant was arrested on May 4, 1989, was advised of his constitutional rights through a Greek interpreter, and indicated that he understood those rights. In a statement to the police after his arrest, defendant admitted starting the fire and said he did so because the owners of the grocery had a poster in the window supporting Mayor Daley. Defendant admitted that he knew there were people in the building because shortly before starting the fire he had purchased a sandwich from one of the store owners.

The parties stipulated that if called as witnesses, Gerson H. Kap-

lan, M.D., and Matthew S. Markos, M.D., would testify that, based upon their independent examinations of defendant on October 6, 1989, they believed that defendant was legally insane at the time of the alleged offense and was unable to conform his behavior to the requirements of the law due to schizophrenia.

The trial court found defendant not guilty by reason of insanity and ordered that he submit to the Department of Mental Health and Developmental Disabilities for inpatient evaluation.

Following a hearing, the trial court entered an order on December 12, 1990, involuntarily remanding defendant to the custody of the Department of Mental Health and Developmental Disabilities for an indefinite time, but not beyond November 3, 2003 ($14^1/2$ years from the date of defendant's arrest). The court calculated defendant's commitment term by deducting statutory day-for-day good-conduct credit as well as an additional 180 days of good-conduct credit from the 30-year maximum sentence possible if defendant had been convicted of aggravated arson. See Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West 1992)).

On January 31, 1991, an amended commitment order was entered on the court's own motion and over defendant's objection. This amended commitment order revoked the additional 180-day good-conduct credit from defendant's maximum period of commitment and thereby changed the maximum commitment term from $14^1/2$ years to 15 years from the date of defendant's arrest. Based upon this amended commitment order, defendant would be eligible for release on or before May 3, 2004. Defendant has appealed, contending that he was entitled to receive the 180 days of good-time credit which was revoked by the trial judge in her amended commitment order.

The State asserts that by failing to object at the hearing and failing to file a motion to reduce his commitment term, defendant has waived his right to challenge the amended commitment order which revoked the additional 180 days of good-conduct credit. It has been held, however, that there is no duty to file a post-sentencing motion to preserve alleged errors in sentencing. (*People v. Turner* (1992), 233 Ill. App. 3d 449, 455-56, 599 N.E.2d 104.) Because the involuntary commitment of a defendant found not guilty by reason of insanity affects the defendant's fundamental liberty interest (*People v. Williams* (1986), 140 Ill. App. 3d 216, 223, 488 N.E.2d 649), alleged error in the determination of the maximum term of commitment may be considered on review even where that alleged error was not brought to the attention of the trial court (*People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461). We note that defense counsel did voice an objection at the time the amended commitment order was

entered by the trial court. Consequently, we reject the State's assertion that defendant waived his right to appeal the trial court's amended commitment order.

On appeal, defendant contends that the trial court erred in computing his maximum term of commitment by excluding the additional 180-day period of good-time credit.

Aggravated arson, a Class X felony, is punishable by a sentence of 6 to 30 years' imprisonment. See Ill. Rev. Stat. 1989, ch. 38, pars. 20—1.1, 1005—8—1(a)(3) (now 720 ILCS 5/20—1.1; 730 ILCS 5/5—8—1(a)(3) (West 1992)).

Section 5—2—4(b) of the Unified Code of Corrections (Code) states that the term of commitment for a defendant found not guilty by reason of insanity shall not exceed the maximum length of time that the defendant would have been required to serve, less credit for good behavior, if he had been convicted of and received the maximum sentence for the most serious crime for which he was acquitted by reason of insanity. Ill. Rev. Stat. 1989, ch. 38, par. 1005—2—4(b) (now 730 ILCS 5/5—2—4(b) (West 1992)).

Section 3—6—3(a)(2) of the Code provides that each prisoner of the Illinois Department of Corrections shall receive one day of good-conduct credit for each day of service ("statutory good time credits"), and each day of good-conduct credit shall reduce by one day the inmate's period of incarceration set by the court. See Ill. Rev. Stat. 1989, ch. 38, par. 1003—6—3(a)(2) (now 730 ILCS 5/3—6—3(a)(2) (West 1992)).

Pursuant to the guidelines in *People v. Thiem* (1980), 82 Ill. App. 3d 956, 962, 403 N.E.2d 647, the amended commitment order entered by the trial court set defendant's maximum term of commitment at 15 years, considering the 30-year maximum sentence for aggravated arson and deducting the day-for-day good-conduct credit mandated in section 3—6—3(a)(2).

Defendant argues, however, that the trial court erred in refusing to grant him the 180-day good-time credit provided in section 3—6—3(a)(3), which states that the Director (of the Department of Corrections) may award up to 180 days' additional good-conduct credit for meritorious service in specific instances as the Director deems proper. (Ill. Rev. Stat. 1989, ch. 38, par. 1003—6—3(a)(3) (now 730 ILCS 5/3—6—3(a)(3) (West 1992)).) Defendant characterizes the section 3—6—3(a)(3) good-conduct credit as "compensatory" and argues that he is entitled to receive the additional 180 days of good-conduct credit authorized by this section.

The distinction between "statutory good time credits" and "compensatory good time credits" was fully explained in *Johnson v.*

*Franzen* (1979), 77 Ill. 2d 513, 397 N.E.2d 825. In describing the application of good-conduct credits to sentence terms, the Illinois Supreme Court noted that the day-for-day schedule of good-conduct credits for good behavior provided in section 3—6—3(a)(2) were known as "statutory good time credits." Good-conduct credits awarded to prisoners who performed work assignments or participated in other Department programs were authorized by section 3—12—5 and were known as "compensatory good time credits." See *Johnson*, 77 Ill. 2d at 516; Ill. Rev. Stat. 1977, ch. 38, par. 1003—12—5.

Because there were not enough jobs or programs to accommodate those who sought "compensatory good time credits," the requirement that the prisoner perform work assignments or participate in other programs was eliminated. Consequently, eligibility for "compensatory good time credits" was no longer dependent upon the performance of work assignments or other meritorious activity by the inmate, and "compensatory good time" was made available to all inmates within the Department of Corrections. (See *People v. Tanzy* (1983), 99 Ill. 2d 19, 23, 457 N.E.2d 390, citing *In re Commitment of Coppersmith* (1982), 108 Ill. App. 3d 161, 438 N.E.2d 1267; *Hampton v. Rowe* (1980), 88 Ill. App. 3d 352, 354, 410 N.E.2d 511.) Section 3—12—5 was amended as of February 1, 1978, and the amended version of this section provided that prisoners who performed work assignments or participated in other programs could earn wages. The accrual of "compensatory good time credits" was deleted from this statutory section. Also on February 1, 1978, section 3—6—3(a) was amended to include subparagraph (3), which had not previously existed. This section originally provided 90 days of good-time credit, but was amended July 13, 1990, to provide 180 days of credit in certain circumstances.

Noting this change in the law, the *Rowe* opinion stated that the only difference between "statutory good time" and "compensatory good time" was the amount and method of computation. (*Rowe*, 88 Ill. App. 3d at 354-55.) Significantly, although section 3—12—15 did not provide for "compensatory good time credits" after February 1, 1978, the cases continued to refer to these credits as separate and distinct from "statutory good time credits."

The Illinois Supreme Court has unequivocally held that a defendant found not guilty by reason of insanity is entitled to "compensatory good time credits." (*Tanzy*, 99 Ill. 2d at 23-24, citing *In re Commitment of Coppersmith*, 108 Ill. App. 3d 161, and *Rowe*, 88 Ill. App. 3d 352.) The cases cited by the State, *People v. Spudic* (1986), 144 Ill. App. 3d 1071, 495 N.E.2d 616, and *People v. Williams* (1986),

140 Ill. App. 3d 216, 488 N.E.2d 649, involved other issues and did not specifically address or discuss the applicability of section 3—6—3(a)(3) good-time credit in determining the maximum term of commitment for a defendant found not guilty by reason of insanity.

The legislative history recounted above reflects that the "compensatory good time credit" formerly provided in section 3—12—5, requiring work performance or program participation, was supplanted by the good-time credit provided in section 3—6—3(a)(3), which did not require work performance or program participation. See generally *Lane v. Sklodowski* (1983), 97 Ill. 2d 311, 316-17, 454 N.E.2d 322.

We hold that defendant should have received the "compensatory good time credit" of 180 days provided in section 3—6—3(a)(3). (See *Tanzy*, 99 Ill. 2d at 23-24; *People v. Hampton* (1983), 121 Ill. App. 3d 273, 278, 459 N.E.2d 985; *In re Commitment of Coppersmith*, 108 Ill. App. 3d at 164; *Rowe*, 88 Ill. App. 3d at 357.) Defendant would be entitled to receive the "compensatory good time credit" specified in section 3—6—3(a)(3) despite the fact that the grant of such credit is within the discretion of the Director of the Department of Corrections and is based upon meritorious service by the defendant. See *People v. Spudic* (1986), 144 Ill. App. 3d 1071, 1075, 495 N.E.2d 616; *In re Commitment of Guy* (1984), 126 Ill. App. 3d 267, 269-70, 466 N.E.2d 1252 (good-time credits cannot be revoked on the basis of subsequent bad conduct and are not earned by an insanity acquittee during the course of his commitment, but are included in computing the maximum period of commitment).

Accordingly, the amended commitment order is vacated, and the cause is remanded for entry of a new commitment order upon recalculation of the defendant's maximum term of commitment after the 180 days of compensatory good-time credit are applied.

Vacated and remanded.

EGAN, P.J., and McNAMARA, J., concur.